IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CLS PRODUCTS, LLC** and **STEPHEN J. CALDWELL**,<br><br>        Plaintiffs,<br><br>        v.<br><br>**CONTECH INTERNATIONAL, LLC d/b/a PHOENIX CURB MACHINES, STUART JOHNSON,** and **JOHN DOES 1-10**,<br><br>        Defendants. | Case No. 3:14-cv-00218-PK<br><br>**OPINION AND ORDER** |

Richard W. Todd, TODD & SHANNON LLP, 226 W. Hist. Col. River Highway, Troutdale, OR 97060. Whitney C. Gibson, VORYS, SATER, SEYMOUR AND PEASE LLP, 301 East Fourth St., Suite 3500, Cincinnati, OH 45202. Of Attorneys for Plaintiffs.

Ryan C. Kaiser and Gregory P. Lynch, MILLER NASH GRAHAM & DUNN LLP, 1567 SW Chandler Avenue, Suite 204, Bend, OR 97702. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

      Before the Court is Defendant/Counter-Plaintiff ConTech International, LLC's ("ConTech") Motion to Enforce Judgment and Permanent Injunction against Plaintiffs/Counter-Defendants CLS Products, LLC and Stephen J. Caldwell (collectively, "CLS"). For the reasons

PAGE 1 – OPINION AND ORDER

that follow, ConTech's motion is granted in part and the Stipulated Judgment and Permanent Injunction (Dkt. 30) is vacated and rescinded.

## BACKGROUND

Stephen J. Caldwell and Edgar Taylor were co-owners of Pro Curb, a limited liability company that designed, manufactured, and sold slipform curb machines. Sometime before 2011, the business relationship between Mr. Caldwell and Mr. Taylor deteriorated and the two parties severed all business ties. In 2011, Mr. Taylor joined ConTech and assigned his rights in Pro Curb's machines to ConTech. As Mr. Taylor's assignee, ConTech filed a lawsuit against Mr. Caldwell and Pro Curb that sought, among other relief, a declaration that Mr. Taylor was the sole owner of the Pro Curb machines. In April 2012, the Multnomah County Circuit Court entered a judgment against Mr. Caldwell that awarded Mr. Taylor ownership of the Pro Curb machines, subject to Mr. Taylor's assignment to ConTech.

On February 11, 2014, CLS brought suit against ConTech, alleging defamation, unlawful promotion of commercial activities in violation of the Lanham Act,[1] and tortious interference with CLS's business relationships. ConTech subsequently brought counterclaims against CLS, alleging unfair competition, misappropriation of trade secrets, and unjust enrichment. On August 12, 2014, based upon the parties' joint request, the Court entered a Stipulated Judgment and Permanent Injunction ("SJPI") resolving the above matters.

On September 24, 2014, ConTech filed the present motion to enforce judgment, alleging that CLS had violated paragraph 3(a) of the SJPI. Paragraph 3(a) states in relevant part:

> [CLS], together with their respective officers, agents, servants,
> employees, and attorneys or those in active concert or participation
> with them who have actual notice of the injunction shall be and
> hereby are permanently restrained and enjoined from:

---

[1] 15 U.S.C. §§ 1051 et seq.

PAGE 2 – OPINION AND ORDER


> a. Creating, copying, altering, distributing, or otherwise using any images, videos, recordings, marks, labels, words, text, or symbols that *reflect, show, represent*, mention, or otherwise refer to Phoenix Curb's personnel . . . and/or any of the following products: (i) any slipform curb machines produced by Phoenix Curb, including, without limitation, the PCM 2500, PCM 3300, PCM 6500, and PCM 7500; (ii) the "Curbie" curb cutting machine produced by Phoenix Curb; (iii) the Lift-Off System produced by Phoenix Curb, including models LF-1500, LF-3000, and LF-3000E; (iv) the Municipality Package produced by Phoenix Curb; and (v) the slipform curb machines shown on Exhibit A attached hereto (collectively, the "Protected Products").

Dkt. 30, p. 3-4 (emphasis added). Specifically, ConTech alleges that CLS violated the SJPI by "continuing to display and use images and video that reflect, show, and represent" ConTech's products identified in the SJPI. ConTech requested that the Court find CLS in contempt and order full compliance with the SJPI.

On December 1, 2014, after considering the parties' briefing on ConTech's motion to enforce, the Court tentatively concluded that the disputed language in paragraph 3(a) of the SJPI was ambiguous. Before issuing its ruling, the Court requested that both parties submit supplemental briefing on two questions: "If the Court finds that paragraph 3(a) [of the SJPI] is ambiguous (1) how would this finding affect ConTech's request that the Court hold [CLS] in contempt for violation of the SJPI; and (2) what, if any, additional action the parties would request from the Court?"

Both parties then filed supplemental briefs with divergent requests. ConTech requested that the Court: (1) defer ruling on the motion to enforce and allow modest discovery regarding the parties' intent regarding paragraph 3(a); (2) after discovery, clarify the meaning of paragraph 3(a); or (3) in the alternative, relieve the parties from the SJPI pursuant to Fed. R. Civ. P. 60(b) so that ConTech may pursue its underlying claims. CLS requested that the motion to enforce be dismissed.

PAGE 3 – OPINION AND ORDER

On January 26, 2015, the Court granted ConTech's request and allowed limited discovery regarding Mr. Caldwell's intentions and understanding with respect to paragraph 3(a) of the SJPI. Pursuant to the Court's order, ConTech took the depositions of Mr. Caldwell and Cameron Grieb, a former employee of CLS. On March 13, 2015, in light of this additional discovery, ConTech filed supplemental briefing renewing its request that the Court (1) find that CLS willfully violated the SJPI by displaying certain photos on its website; (2) clarify paragraph 3(a) of the SJPI in a manner that requires CLS to remove certain photos on CLS's website; or (3) vacate the SJPI under Fed. R. Civ. P. 60(b)(3) based upon alleged misrepresentations made by CLS regarding the existence of certain photos.

## DISCUSSION

### A. Whether the SJPI Is Ambiguous

The Court relies on basic principles of contract law to interpret the SJPI. *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) ("An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law."); *Miller v. Fairchild Indus.*, 797 F.2d 727, 733 (9th Cir.1986). "Since consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts." *Jeff D.*, 899 F.2d at 759 (citing *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 892 (9th Cir. 1982)). The construction and enforcement of settlement agreements are governed by principles of state law that apply to interpretation of contracts generally. *Air Line Stewards v. Trans World Airlines*, 713 F.2d 319, 321 (7th Cir. 1983). Accordingly, the Court applies Oregon contract law in interpreting the SJPI.

Under Oregon law, "[w]hen considering a written contractual provision, the court's first inquiry is what the words of the contract say, not what the parties say about it." *State v. Heisser*, 350 Or. 12, 25-26 (2011) (quoting *Eagle Industries, Inc. v. Thompson*, 321 Or. 398, 405 (1995)).

PAGE 4 – OPINION AND ORDER

Accordingly, a court first "examines the text of the disputed provision, in the context of the document as a whole. If the provision is clear, the analysis ends." *Yogman v. Parrott*, 325 Or. 358, 361 (1997). The meaning of an unambiguous contractual provision is a question of law. *Heisser*, 350 Or. at 25; *Valenti v. Hopkins*, 324 Or. 324, 331 (1996) ("As a general rule, the construction of a contract is a question of law. Unambiguous contracts must be enforced according to their terms . . . ."). Similarly, the determination of whether a contractual provision is ambiguous also is a question of law. *Heisser*, 350 Or. at 26; *Valenti*, 324 Or. at 331-32. If the disputed provision in a contract is found to be ambiguous, Oregon law requires the Court to proceed to a second step that involves examining extrinsic evidence of the contracting parties' intent, including, if helpful, evidence regarding the parties' "practical construction" of an agreement. *Yogman*, 325 Or. at 363-6. If resort to such extrinsic evidence does not resolve the ambiguity, the Court proceeds to a third and final step, which is to resort to "appropriate maxims of construction." *Id.* at 364.

      Here, paragraph 3(a) of the SJPI prohibits CLS from distributing or otherwise using any images or videos that "reflect, show, represent, mention, or otherwise refer to" ConTech's curb machines. According to ConTech, the term "reflect" in paragraph 3(a) of the SJPI "not only prohibits [CLS] from using images and videos of the Protected Products, but also any images or videos that resemble or evidence the characteristics of the Protected Products." ConTech concedes, however, that the meaning of the term "reflect" is elastic and capable of multiple interpretations. *See United States v. Philip Morris USA Inc.*, 218 F.R.D. 312, 319 n.17 (D.D.C. 2003) (stating that "[d]ictionary definitions of 'reflect' demonstrate the elasticity of the word"). Moreover, the SJPI itself provides no means of clarifying the meaning of the term "reflect" as used in paragraph 3(a), and the other terms and conditions of the SJPI similarly shed no light on

PAGE 5 – OPINION AND ORDER

the issue. Accordingly, the Court now affirms its previously tentative conclusion (Dkt. 35) that the disputed language in paragraph 3(a) of the SJPI is ambiguous. *See Local Motion, Inc. v. Niescher*, 105 F.3d 1278, 1280 (9th Cir. 1997) ("An ambiguous term is one susceptible to more than one reasonable interpretation.").

The Court next turns to the second step of contract analysis under Oregon law, namely, examining extrinsic evidence of the contracting parties' intent, including, if helpful, evidence regarding the parties' "practical construction" of an agreement. *Yogman*, 325 Or. at 363-6. Based on the declaration of Mr. Grieb, ConTech alleges that the curb machines currently being sold by Mr. Caldwell were intentionally modeled after ConTech's machines. According to Mr. Grieb, in furtherance of a joint venture with a Brazilian company, IMB, Mr. Caldwell obtained actual ConTech curb machines—specifically, those machines designated as PC200, PC400, and PC600 by ConTech—reverse engineered those machines, and prepared CAD drawings based on their designs. These CAD drawings were provided to IMB to produce new curb forming machines that are sold by CLS and IMB as the CLS200, CLS400, and CLS600 curb machines.

According to ConTech, these facts demonstrate that CLS knew that it was in violation of the SJPI and that the curb machines currently sold by CLS "reflect" ConTech's designs because the undisputed evidence, namely, the sworn declaration of Mr. Grieb, shows that the machines sold by CLS were based on, and thus "reflect," ConTech's machines. Moreover, citing the deposition testimony of Mr. Caldwell, ConTech notes that Mr. Caldwell admits intentionally using "doctored" photographs of ConTech's curb machines on the CLS website in order to sell the curb machines produced by IMB during the two years before entry of the SJPI. According to ConTech, both the fact that the curb machines currently sold by CLS were intentionally based on

PAGE 6 – OPINION AND ORDER

ConTech's designs and CLS's use on its website of "doctored" photographs of ConTech's actual machines demonstrate that CLS knew it was in violation of paragraph 3(a) of the SJPI.

CLS does not directly respond to the statements made by Mr. Grieb in his sworn declaration. Instead, CLS argues that the word "reflect" in paragraph 3(a) of the SJPI should not be construed to mean "similar to," "imitation of," or "resemble." According to CLS, all curb forming machines have certain similarities based on their function: "they are all boxes with a hopper and a sensor and vibrator." By analogy, CLS argues that its curb forming machines do not "reflect" ConTech's machines, in the same way that a car made by one manufacture does not necessarily "reflect" that of another merely because it has "a body, tires, engine, and transmission." Moreover, CLS identifies eight separate distinguishing characteristics that differentiate its machines from ConTech's machines. Accordingly, CLS maintains, paragraph 3(a) of the SJPI prohibits CLS only from showing photographs of ConTech's actual and specific products, nothing more.

Despite ConTech's allegations of misconduct by CLS in the creation and sale of its curb forming machines, these allegations do not resolve the ambiguous meaning of the term "reflect" in paragraph 3(a) of the SJPI. In fact, ConTech concedes that the SJPI does not "prohibit[] Mr. Caldwell from developing, marketing, or selling machines that are sufficiently dissimilar to" ConTech's machines. How the parties or the Court may determine if a machine sold by CLS will be "sufficiently dissimilar" to one of ConTech's machines, and thus not be in violation of the SJPI, is never explained. Moreover, neither the declaration of Mr. Grieb nor the deposition testimony of Mr. Caldwell clarify exactly when a curb forming machine is "sufficiently dissimilar" to ConTech's machines such that it does not violate paragraph 3(a) of the SJPI, nor does this evidence definitively clarify that the parties held the same understanding of the term

PAGE 7 – OPINION AND ORDER

"reflect." In short, ConTech asks the Court to construe an ambiguous term in its favor, but fails to direct the Court to extrinsic evidence demonstrating that both parties intended the same meaning for the word "reflect."

Finally, the Court proceeds to the third and final step of Oregon's contract interpretation methodology, namely, resort to "appropriate maxims of construction." *Yogman*, 325 Or. 358 at 634. This step, however, sheds no light on the matter because neither party has identified any "appropriate maxim of construction" that would resolve the ambiguity in paragraph 3(a) of the SJPI. Accordingly, the Court finds that, after applying state law principles of contract interpretation to the SJPI, the meaning of the term "reflect" in paragraph 3(a) remains ambiguous.

The presence of an ambiguous material term may indicate that no meeting of the minds occurred when a document was signed. *Local Motion*, 105 F.3d at 1280 (citing 1 Corbin, *Contracts* § 4.10 (1993); *Restatement (Second) of Contracts* § 20 (1981) ("There is no manifestation of mutual assent to an exchange if the parties attach materially different meanings to their manifestations and . . . neither party knows or has reason to know the meaning attached by the other."). Here, the Court has examined the specific language of paragraph 3(a), the broader context of the SJPI, and the extrinsic evidence provided by ConTech. Based on this, the Court finds that the meaning of paragraph 3(a) remains ambiguous and that there was no meeting of the minds between CLS and ConTech. Thus, the Court concludes that paragraph 3(a) of the SJPI is unenforceable. *See Local Motion*, 105 F.3d at 1280 (affirming a district court's finding that, "[b]ecause there was no meeting of the minds," the parties did not form "an enforceable contract"); *see also Tai Ham v. Selectron Int'l Optronics, LLC*, 324 F. App'x 583, 584 (9th Cir. 2009) (unpublished) (affirming a district court's denial of motion to enforce settlement

agreement "[b]ecause the parties did not have a meeting of the minds as to the meaning of [a] material term"). Accordingly, ConTech's request that the Court clarify and then enforce paragraph 3(a) of the SJPI is denied.

## B. Whether to Vacate the SJPI

As an the alternative to its request that the Court clarify any ambiguity in the SJPI, ConTech requests that the Court relieve the parties from the SJPI pursuant to Fed. R. Civ. P. 60(b)(3) based upon CLS's alleged misrepresentation that CLS did not have photographs of the machines that it intended to sell after the entry of the SJPI.

Rule 60(b)(3) permits a court to relieve a party of a final judgment by reason of "fraud . . ., misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). To prevail under this portion of Rule 60(b), the moving party must establish that a judgment was obtained by fraud, misrepresentation, or misconduct, and that the conduct complained of prevented the moving party from fully and fairly presenting the case. *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1338 (9th Cir. 1986); *Bunch v. United States,* 680 F.2d 1271, 1283 (9th Cir. 1982). The rule is aimed at judgments that were unfairly obtained, not at those that are merely factually incorrect. *In re M/V Peacock on Complaint of Edwards*, 809 F.2d 1403, 1404-05 (9th Cir. 1987) (citing *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978)).

In the context of discovery disputes, "['f]ailure to disclose or produce materials requested in discovery can constitute "misconduct" within the purview of [Rule 60(b)(3)].'" *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 879 (9th Cir. 1990) (quoting *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988)). "Misconduct," within the meaning of Rule 60(b)(3), "does not demand proof of nefarious intent or purpose as a prerequisite to redress. . . . The term can cover even accidental omissions." *Anderson*, 862 F.2d at 923. Moreover, "when the case involves the

PAGE 9 – OPINION AND ORDER

withholding of information called for by discovery, the adverse party need not establish that the result in the case would be altered." *Jones*, 921 F.2d at 879. Misconduct can be demonstrated when: (1) a party exercised due diligence in its discovery requests; (2) the opposing party knew, or was charged with knowledge, of the missing documents, and had constructive possession of it; and (3) the defendant did not divulge the document's existence. *Id.* (*citing Anderson,* 862 F.2d at 928).

As shown by ConTech, during the negotiation of the SJPI, ConTech learned that CLS intended to sell other curb machines after the entry of the SJPI. According to ConTech, it was unwilling to agree to an injunction that would allow CLS to sell curb machines that "embodied and reflected the designs" of ConTech's curb machines. ConTech also has shown that during the negotiation of the SJPI, CLS's counsel, James W. Kelly, represented to ConTech's counsel, Ryan C. Kaiser, that the curb machines that CLS intended to sell after entry of the SJPI would not resemble Pro Curb's machines. Mr. Kaiser claims that, in order to verify this representation, he requested that CLS produce photographs of the machines that CLS intended to sell but that Mr. Kelly represented that no such photograph existed because the machines were in an early production phase.

Now, based upon the deposition of Mr. Caldwell and the declaration of Mr. Grieb, ConTech has shown that photographs of the machines that CLS intended to sell after entry of the SJPI did in fact exist and were either intentionally or negligently withheld from ConTech in response to its request. During his deposition, Mr. Caldwell testified that he had photographs of the curb machines that he intended to sell before the entry of the SJPI. Similarly, during his deposition, Mr. Grieb, a former CLS employee, testified that CLS had photographs of these machines not less than one year before entry of the SJPI. According to ConTech, if CLS had

provided these photos in response to ConTech's request, ConTech would have demanded that they be included in the SJPI, or would have proceeded to trial on its underlying claims.

CLS, however, makes no mention of the allegedly withheld photographs and does not address ConTech's claims, supported by the sworn declarations of Mr. Kaiser and Mr. Grieb and the testimony of Mr. Caldwell, beyond dismissively referring to Mr. Grieb as "an embittered ex-employee," and stating that Mr. Caldwell's integrity has been unfairly impugned by ConTech's allegations. Instead, CLS reiterates its position that: (1) the SJPI only prohibits CLS from showing ConTech's actual, specific curb machines; (2) Mr. Caldwell's deposition testimony demonstrates that this was his understanding of the SJPI; and (3) Mr. Caldwell would not have signed the agreement if the SPJI would have unambiguously precluded him from selling curb machines that simply looked similar to ConTech's machines.

Based upon the unchallenged declarations of Mr. Kaiser and Mr. Grieb, and the deposition testimony of Mr. Caldwell, the Court finds that CLS's failure to disclose the photographs of the curb machines that it intended to sell after the entry of the SJPI amounts to misconduct within the meaning of Rule 60(b)(3)[2] and that this misconduct warrants relief from the SJPI. Both CLS and ConTech now claim that they never would have agreed to the entry of the SJPI if the opposing party's interpretation were unambiguously set forth in the relevant documents. It also appears to be undisputed that this misunderstanding would have been easily avoided had the requested photographs been disclosed before the parties agreed to request entry of the SJPI. Accordingly, vacating the SJPI under Rule 60(b)(3) is the appropriate remedy, and the parties may now return to litigating their underlying claims.

---

[2] Because it does not affect the outcome of the present motion, the Court declines to decide at this time whether CLS's failure to disclose the photographs requested by ConTech was intentional or only negligent.

PAGE 11 – OPINION AND ORDER

## CONCLUSION

ConTech's Motion to Enforce Judgment and Permanent Injunction (Dkt. 31) is GRANTED in part and DENIED in part. The Stipulated Judgment and Permanent Injunction (Dkt. 30) is vacated and rescinded.

**IT IS SO ORDERED**.

DATED this 22nd day of April, 2015.

<div style="text-align:right">

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

</div>